IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-01731-PSF-BNB

GARY SALAZAR, as heir to the estate of his wife, Aida Murillo; and
ARELI VICTORIA SALAZAR, the minor child of Aida Murillo, by and through her
father and next friend, Gary Salazar,

      Plaintiffs,

v.

SHERRI LORENZO,

      Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. # 66) filed on May 29, 2007, together with a supporting brief (Dkt. # 67) and Exhibits A through J attached thereto ("Defendant's Brief"). Plaintiffs filed their brief in opposition to the motion on June 18, 2007 (Dkt. # 68) together with Exhibits 1 through 15 attached thereto. Defendant Lorenzo filed her reply brief on July 13, 2007 (Dkt. # 73), along with additional exhibits marked A through E. A Final Pretrial Order was entered on August 31, 2007 (Dkt. # 77) and the case has been set for a five-day jury trial commencing May 5, 2008 (Dkt. # 80). The matter is ripe for determination.

**I.    BACKGROUND**

Plaintiffs Gary Salazar and Areli Victoria Salazar are next of kin to the late Aida Murillo, formerly an inmate at the Denver Women's Correctional Facility ("DWCF"), who on September 1, 2004 was found unresponsive in her cell. She was transported to the

University of Colorado Medical Center where she was placed on life support. She did not regain consciousness. On September 15, 2004 her family decided to remove her from life support and she was pronounced dead that same day (Final Pretrial Order Stipulated Facts, ¶¶ 1, 17-22).

Plaintiffs' Amended Complaint, filed November 2, 2006 (Dkt. # 33), alleged six causes of action against nine defendants arising out of the circumstances that led up to the death of Ms. Murillo. However, on May 25, 2007, pursuant to a stipulation of dismissal, this Court ordered the dismissal of Defendants Wallace, Altholtz, Kurtz, Kline, Ross, Fowler, Unruh and Allen, leaving Defendant Sherry Lorenzo as the only remaining defendant (Dkt. # 65). The only claims alleged against Defendant Lorenzo are the First, Second and Third Causes of Action in the Amended Complaint. Thus the Fourth, Fifth and Sixth Causes of Action in the Amended Complaint, which are alleged only against the defendants who have now been dismissed from the case, are hereby dismissed as moot.

The Amended Complaint alleges that during the time she was incarcerated at DWCF it was known by Defendant Lorenzo that Aida Murillo was suffering from a severe mental disorder and suicidal tendencies (Amended Complaint, ¶ 20). It further alleges that Murillo died as a proximate cause of her "deteriorated mental condition." *Id.,* ¶ 41. Based on these allegations, plaintiffs' First Cause of Action avers that Defendant Lorenzo acted with "deliberate indifference to Aida Murillo's obvious and serious medical needs" in violation of the Eighth Amendment prohibition against cruel and unusual punishment (*id.*, ¶ 45).

The Amended Complaint also alleges, and the parties have stipulated, that Aida Murillo was transferred to an area of DWCF known as "C-Pod" while another inmate named Dana Brown, alleged to be Murillo's former homosexual lover, was also housed in C-Pod (Final Pretrial Order, Stipulated Facts, ¶¶ 14-15).  The Amended Complaint alleges the transfer exposed Murillo to a serious threat of grievous harm from Brown (*id.*, ¶¶ 30, 34, 41).  The Amended Complaint alleges that Murillo begged Defendant Lorenzo not to place her in C-Pod while Brown was still there because Murillo was certain that Brown would kill her, but she was transferred nonetheless (*id.*, ¶ 34). It further alleges that while both inmates were in C-Pod, Brown obtained a drug called Seroquil, "taunted" Murillo to take the drug, and when Murillo took the pills which rendered her in a weakened state, Brown "cut off her oxygen and stopped Murillo's ability to breathe." *Id.*, ¶¶ 36, 38.  It also alleges that plaintiff died as a proximate result of "the inability of the defendants to protect her" from Brown and that they "were aware or should have been aware" that Brown posed a serious threat to Murillo (*id.*, ¶ 41). Based on these facts, plaintiffs' Second Cause of Action avers that defendant Lorenzo acted with "deliberate indifference to Aida Murillo's safety and security" in violation of the Eighth Amendment prohibition against cruel and unusual punishment in making the transfer of Murillo to C-Pod (*id.*, ¶ 51).

The Third Cause of Action alleges that defendants were responsible for the safety and well-being of the resident inmates at DWCF, and that the "totality of the circumstances of the above conditions and restrictions [on Murillo] constituted genuine deprivation and hardship amounting to cruel and unusual punishment over an extended

3

period of time." *Id.*, ¶ 56. It further alleges that "[s]aid restrictions and conditions were not reasonably related to a legitimate goal and were arbitrary and capricious." *Id.*

All three causes of action allege that the acts and omissions of the defendant were carried out maliciously and with "wanton disregard" of the rights of Murillo, causing her severe physical pain, mental anguish, emotional distress and death (*id.*, ¶¶ 46-48; 52-54; 58-60). Plaintiffs, as next of kin to Murillo, allege that as a result of defendant's actions they have suffered grief, loss of companionship and emotional distress (*id.*, ¶¶ 47, 53, 59).

## II.     DEFENDANT'S MOTION AND PLAINTIFFS' RESPONSE

Defendant contends that she is entitled to summary judgment on all three of the causes of action for several reasons. She first claims that the plaintiffs' "state law claims" are barred by the Colorado Governmental Immunity Act (Defendant's Brief at 20-22). Defendant also claims that she is entitled to summary judgment because she did not personally participate in the alleged constitutional violations (*id.* at 8-13). Defendant further assets, citing to deposition testimony taken in discovery, that the asserted conduct on her part does not rise to the level of a constitutional violation, and in any event she is entitled to qualified immunity (*id.* at 13-20). Finally, she argues that since the decedent Murillo has no cause of action against her, the Colorado Wrongful Death Act precludes the next of kin's claims (*id.* at 22-23).

Plaintiffs do not appear to expressly respond to defendant's arguments regarding the Colorado Governmental Immunity Act. They do assert that the deposition testimony referred to in their brief shows substantial personal involvement on the part

4

of defendant, particularly conduct that rises to the level of a violation of the Eighth Amendment prohibition against knowingly exposing inmates to safety and security risks.  Plaintiffs claim such conduct constitutes knowing violation of established constitutional rights, so that qualified immunity is not available to defendant.

### III.	STANDARD OF REVIEW

The purpose of summary judgment is to determine whether a trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is appropriate under F.R.Civ.P. 56(c) only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party.  *Gray v. Phillips Petroleum Co.,* 858 F.2d 610, 613 (10th Cir. 1988).  To defeat a properly supported motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff."  *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).  In addition, "where the non-moving party will bear the burden of proof at trial on a dispositive issue that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment."

*McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir. 1998) (citation omitted).

**IV.   ANALYSIS**

   **A.   Colorado Governmental Immunity Act**

Although plaintiffs' brief makes no response to this issue, the Court finds no basis for applying the Colorado Governmental Immunity Act to bar the claims asserted in this case. First, there do not appear to be any "state law claims" contained in the Amended Complaint, as all alleged causes of action arise under the federal civil rights acts. In any event, while the Colorado Governmental Immunity Act expressly addresses immunity for public entities and their employees, the statute expressly does not apply to acts or omissions of a *public employee* taken in a willful and wanton manner. C.R.S. § 24-10-105(1) provides, in pertinent part: "no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his duties and within the scope of his employment, unless such act or omission was willful and wanton. . . ." As stated in *King v. U.S.*, 53 F. Supp.2d 1056, 1072 (D. Colo. 1999), *rev'd in part on other grounds*, 301 F.3d 1270 (10th Cir. 2002), the language of that statute concerning waiver of immunity for willful and wanton acts or omissions "operates as a waiver of a public *employee's* immunity but does not operate as a waiver of a public entity's immunity." (Emphasis in original). Here, Defendant Lorenzo is being sued as a public employee and the Amended Complaint alleges, and the evidence of record arguably may be found by the jury to show, that she acted in a willful

6

and wanton manner.  In addition, the Court rejects defendant's argument that C.R.S. § 24-10-106 (1.5)(a) bars the claims here.  That subsection provides:

> The waiver of sovereign immunity created in paragraphs (b) and (e) of subsection (1) of this section does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction, and such correctional facility or jail shall be immune from liability as set forth in subsection (1) of this section.

Defendant suggests that any waiver of governmental immunity created by the Act does not apply here since Aida Murillo was convicted of a crime and incarcerated in a correctional facility.  However, that limitation only applies when the waiver of immunity is based on sub-paragraphs (b) and (e) of C.R.S. § 24-10-106(1).  Here, as noted above, this case does not depend on a waiver of governmental immunity based on those paragraphs, but rather there is no governmental immunity at all as the conduct is alleged to be willful conduct of a public employee.  Accordingly, there is no basis to dismiss this case based on the provisions of the Colorado Governmental Immunity Act.

### B.     Defendant's Personal Participation and Qualified Immunity

In order to prove a claim under 42 U.S.C. §1983 against a prison official for an alleged violation of constitutional rights, a plaintiff must first prove that the individual defendant personally participated in the alleged violation of the constitutional right. *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).  Once the prison official asserts qualified immunity, the plaintiff must show that: (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred.  *Verdecia v. Adams,* 327 F.3d 1171, 1174 (10th Cir. 2003).  This framework is applied to each of plaintiffs' three causes of action.

1. <u>Deliberate Indifference to Medical Needs</u>

The parties have stipulated that at the time of these events Defendant Lorenzo was a sergeant in the housing section of DWCF and her duties included "moving inmates within the facility." Final Pretrial Order, Stipulated Facts, ¶¶ 12,13. Defendant asserts that she is not a mental health worker or medical care provider (Defendant's Brief at 9). Plaintiffs have offered no evidence, or even suggested, that defendant had any role in providing health care to inmates. However, as a first line supervisor, defendant may have had some responsibility to see that the inmates' medical needs were addressed. *See* Lorenzo Depo., Exhibit C to Defendant's Brief at 7.

To overcome the assertion of qualified immunity and establish an Eighth Amendment claim based on alleged failure by a prison guard to provide adequate medical care, a prisoner must prove both an objective and subjective component of his claim. *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005). The objective component requires a showing that the inmate's alleged harm was sufficiently serious. *Id.* at 753. The subjective component requires a showing that the prison official had a culpable state of mind–namely, deliberate indifference to the prisoner's serious medical needs. *Id.* at 751. As stated in *Mata, supra,* "deliberate indifference occurs when prison personnel deny or delay access to needed medical care, i.e., when they fail to fulfill their gatekeeper role." *Id.* at 751 n.3.

Here, plaintiffs have not offered any evidence that defendant failed to perform such gatekeeper responsibility. While plaintiffs allege in the Amended Complaint that defendant showed deliberate indifference to Murillo's medical needs, they have come

8

forward with no evidence of specific conduct by Defendant Lorenzo that shows she failed to fulfill any gatekeeper role she may have had. In fact, it appears to the Court plaintiffs have made no argument in their brief in response to defendant's motion that addresses the claim for deliberate indifference by defendant to Murillo's medical needs. Accordingly, due to an absence of evidence of personal participation in any denial of medical treatment, and the absence of any evidence of a culpable state of mind, Defendant Lorenzo is entitled to summary judgment on the First Cause of Action.

2. <u>Deliberate Indifference to Safety and Security</u>

To establish a cognizable Eighth Amendment claim for failure to protect an inmate, a plaintiff must show that she is incarcerated under conditions posing a substantial risk of serious harm (the objective component), and that the defendant prison officials were deliberately indifferent to her safety (the subjective component). *Verdecia v. Adams, supra*, 327 F.3d at 1175, citing *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir.2001). The subjective component of the deliberate indifference test requires that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998). Deliberate indifference requires showing that the prison official disregarded a risk of harm of which he was aware. *Id.*

Unlike the claim for deliberate indifference to Murillo's medical needs, plaintiffs have offered evidence from which a jury could find that Defendant Lorenzo knew of a substantial risk to Murillo if she were housed near Brown, and nonetheless defendant

9

apparently took no action to avoid the risk and transferred Murillo to C-Pod while Brown was still housed there.

In *Verdecia*, the Tenth Circuit panel rejected plaintiff's argument that the defendant prison officials had the requisite culpable state of mind because there was no evidence that they subjectively knew of the risk to the inmate or that they were deliberately indifferent to the risk. 327 F.3d at 1176. The inmate argued that the defendants should have deduced from prior incidents that placing him, a person of Cuban nationality, in a cell with Latin King gang members constituted an excessive risk to his safety. *Id.* Although the inmate had told one of the defendants that he wanted to be transferred to another cell, there was no evidence that the prisoner had "explained the reason for his requested transfer." *Id.* And, although the inmate had sent a written request for transfer to the other defendant, there was no evidence that he had received the written transfer request. *Id.*

Here, by contrast, plaintiffs have adduced evidence through other inmates' deposition testimony that Defendant Lorenzo was made aware of Murillo's concerns for her safety if she were housed near inmate Brown. Inmate Angela Greever testified that she was present at a meeting between Murillo and Lorenzo, when Murillo told the defendant that "she was scared for her life" on account of Brown (Depo. of Angela Greever, Exhibit 11 to Plaintiffs' Response at 16). According to inmate Erica Williams, who testified that she overheard the conversation while standing outside Lorenzo's door, Murillo "begged" Lorenzo not to move her to C-Pod because she feared that Brown would kill her (Depo. of Williams, Exhibit 9 to Plaintiffs' Response at 43).

Lorenzo admitted she had a meeting with Greever and Murillo, but denied being told that Brown was a threat to Murillo (Depo. of Lorenzo, Exhibit C to Defendant's Brief at 34).

According to Greever, defendant's response to Murillo's plea was "that she would make a phone call and see what she could do, but that her hands were tied and there was nothing she could do..." because the "the order came down from her boss and so she had to move her [Murillo] to C-pod." Depo. of Greever at 18. According to Williams' version of the events, defendant was more adamant stating "You're going to C-pod and that's that. She said I don't care." Depo. of Williams at 43. While the two different versions of the event may reflect on the credibility of these witnesses as defendant argues in her brief, the determination of credibility must be left to the jury.

In addition, Noble Wallace, Warden at DWCF, testified that when an officer learns that one inmate may be a threat to another, the inmates are to be separated and the matter investigated to "see how deep the problem is." The officer is supposed to make a report of the information for review by the case manager, and the inmates are to be "temporarily" separated until the officer gets authority from a higher officer "to move them." Depo. of Noble Wallace, Exhibit 8 to Plaintiffs' Brief, at 39-41. Murillo's case manager, Linda Fischer, testified that she recalled only one discussion with Defendant Lorenzo about moving Murillo, and "this sticks out in my mind because it was pretty cruel, and she said I think I'll let her sweat." Depo. of Linda Fischer, Exhibit 13 to Plaintiffs' Brief, at 24-25. Fischer further answered affirmatively when asked if it was her experience that Defendant Lorenzo would use movement of inmates or

11

keeping them with somebody "as a tool for sanctioning them." *Id.* at 29. Defendant Lorenzo denied ever speaking with Fischer about Murillo and Brown being placed in the same pod together. Lorenzo Depo at 36. Again, the conflict in testimony can only be resolved before the jury.

Based on this deposition testimony taken in a light most favorable to the plaintiffs, this Court must find that plaintiffs have come forward with sufficient evidence from which a jury could find that Defendant Lorenzo knew of a substantial risk of harm posed to Murillo, and ignored the potential harm. Moreover, her personal participation in the transfer of Murillo to C-Pod is not genuinely in dispute.

Nonetheless, defendant argues, even if the transfer of Murillo to C-Pod exposed her to potential harm, there is a lack of evidence that Murillo was in fact murdered by Brown. Defendant points out that the coroner's opinion states that the cause of Murillo's death was "due to complications of anoxic brain injury and bronchopneumonia complicating Seroquel[1] toxicity (historic)." Exhibit 4 to Plaintiffs' Brief at 1. Anoxia is defined as a "total lack of oxygen."[2] Apparently that condition can be caused by strangulation, as plaintiffs would suggest, or perhaps it can be caused from the effects of an overdose of Seroquel, as defendant suggests. The coroner's report does not reflect any physical injury, and there is testimony in the record that the guards who first arrived in Murillo's cell did not see physical injuries. *See* Depo. of Keegan Fowler,

---

[1] Seroquel is described as "a psychotropic agent belonging to a chemical class, the dibenzothiazepine derivatives" and as an antidepressant it carries a warning of increased risk of suicide. *See* website Rx List  http://www.rxlist.com/cgi/generic/quetiap.htm.

[2] *See* Online Medical Dictionary at http://cancerweb.ncl.ac.uk/cgi-bin/omd?anoxia.

Exhibit A to Defendant's Brief, at 37. Thus defendant argues, there is insufficient evidence from which a jury could find that Brown caused Murillo's death. Indeed, plaintiffs alleged in their Amended Complaint that Murillo's death may have been a suicide, assisted suicide, or murder, averring nonetheless that defendant showed a deliberate indifference to Murillo's safety (Amended Complaint at ¶ 42).

In cases where the evidence shows that an inmate committed suicide, the plaintiff asserting an Eighth Amendment claim must come forward with evidence that the prison officials were deliberately indifferent to a known or obvious risk of the prisoner committing suicide. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 869 (10th Cir. 1997). Here, plaintiffs have come forward with no evidence from which a jury could infer that Defendant Lorenzo knew of and disregarded an obvious risk of suicide by Murillo. There is no evidence that Murillo, or any other inmate or witness, indicated to defendant that Murillo was considering taking her life. Moreover, as the Court stated in *Gaston v. Ploeger*, 229 Fed. Appx. 702 (10th Cir., April 12, 2007), jailers are not obligated nor able to watch every inmate at every minute of every day to prevent suicides, and thus a plaintiff does not make a showing of deliberate indifference even if he shows such a situation. If plaintiffs' theory here were solely that Ms. Murillo committed suicide, the claim against defendant for violation of the Eight Amendment would be subject to summary judgment.

However, the plaintiffs also contend that Murillo was murdered by Brown in C-Pod (Plaintiffs' Brief at 2), or died after Brown taunted her to take an overdose of drugs. They cite to discovery in the record which provides some evidence that would

13

support a jury finding that Brown caused Murillo's death.  If the jury finds that Brown caused Murillo's death, it may find that deliberate indifference on the part of Defendant Lorenzo led to Murillo's death.

Inmate Janice Stevens, Brown's cell mate at the time Murillo was found unconscious, testified that Brown came to get her on the date, that Brown was "freaking out," and that Brown said to her "I didn't mean to do it. She's like, she stopped breathing," referring to Murillo.  Depo. of Janice Stevens, Exhibit 10 to Plaintiffs' Brief, at 7-8.  Stevens inferred that Brown and Murillo had been fighting, and testified that Brown said she was "choking" Murillo, she "didn't mean to do it," and "she's not breathing."  *Id* at 12-13.

Defendant argues that the statements attributed by Stevens to Brown are not admissible evidence, and should not be considered in opposition to a motion for summary judgment because they are hearsay (Defendant's Reply Brief at 3).  Although the statements attributed to Brown are clearly statements against her interest that would subject her to civil or criminal liability, and thus would be exceptions to the hearsay rule under FRE 804(b)(3), there is no showing here that Brown is unavailable as a witness as also required by that Rule.  The record indicates that Brown has provided deposition testimony in this case.  *See* Exhibit E to Defendant's Brief; Exhibit A to Defendant's Reply Brief.  The excerpts from Brown's deposition provided to the Court do not contain precise questions as to her involvement in Murillo's death, but having given some testimony it does not appear that Brown can be said to be unavailable due to the exercise of privilege or otherwise.  Absent a showing of Brown's

unavailability, FRE 804(b(3) would not render Stevens' testimony an exception to the hearsay rule.

However, the description of events provided by Stevens testimony may support admission of the statements attributed to Brown under FRE 803(2), which excepts from the hearsay rule excited utterances of a declarant even if the declarant is available. The statements attributed to Brown through the testimony of Stevens, made after the startling event of Murillo's being rendered unconscious, and under the stress of excitement caused by Murillo's condition, may well qualify as excited utterances that may be admitted as exceptions to the hearsay rule. *See, e.g. Jonas v. Isuzu Motors Ltd.*, 210 F. Supp 2d 1373, 1379 (M.D. Ga. 2002) (admission by motorist that he fell asleep and caused death of his father is admissible on a summary judgment motion as excited utterance in products liability case against auto manufacturer). While the evidence is not conclusive, and Stevens' testimony may conflict with other evidence, on the present evidentiary record the Court cannot hold as a matter of law that it would be unreasonable for a jury to find that Murillo was murdered by Brown.

Alternatively, as plaintiffs suggest, there is some evidence that Brown may have provided Seroquel to Murillo and induced her to take it (Plaintiff's Brief at 8). Two DOC investigative reports state that an inmate named Bonita Jones informed investigators that on the date in question Brown obtained approximately 8 tablets of Seroquel and stated to Murillo, "you want to kill yourself, I'll help." *See* Exhibits 3 and 14 to Plaintiff's Brief. Although Ms. Jones has apparently not provided deposition testimony, the Court notes that she is listed as a potential witness in the Final Pretrial Order (Dkt. # 77 at 6).

Based on the evidence of record, the Court finds that there are disputed issues of material fact that preclude summary judgment as to plaintiffs' claims of deliberate indifference by Defendant Lorenzo as to the safety and security needs of inmate Murillo.  Accordingly, summary judgment as to the plaintiffs' Second Cause of Action must be denied.

### 3. Totality of Circumstances

It is unclear to the Court how plaintiffs' Third Cause of Action differs from the Second Cause of Action, at least insofar as Defendant Lorenzo is concerned.  As the Tenth Circuit has stated, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Craig v. Eberly, supra*, 164 F.3d at 495 quoting from *Wilson v. Seiter*, 501 U.S. 294, at 305 (1991).  Furthermore, there is no indication that Defendant Lorenzo was responsible for the establishment of prison policies, and there is no authority cited that would create liability on her part for the acts of her supervisors who are no longer defendants in this case.  Accordingly, the Third Cause of Action is dismissed.

### C.   Colorado Wrongful Death Statute

Although plaintiffs' claims do not purport to be brought pursuant to the Colorado Wrongful Death Statute, defendant contends that the statute bars the claims.  She correctly argues that under that statute the heirs of a decedent have only the claims which the decedent would have had "if death had not ensued." *See* C.R.S. § 13-21-202.  Repeating her assertion that immunity bars the claims Murillo would have had against her, Defendant Lorenzo asserts the next of kin plaintiffs are similarly barred.

16

However, as the Court has found, there is a basis on which a jury could find that defendant violated Murillo's constitutional rights under the Eight Amendment, and her heirs may assert the claims which Murillo could have asserted. There are no grounds for dismissing plaintiffs' claims under the Colorado wrongful death statute.

## V.  CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment (Dkt. # 66) is GRANTED in part and DENIED in part. The Fourth, Fifth and Sixth Causes of Action in the Amended Complaint are hereby DISMISSED as moot. The First and Third Causes of Action are DISMISSED with prejudice. The Second Cause of Action remains as against Defendant Lorenzo.

DATED:  October 19, 2007.

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge